In re McLURE'S ESTATE. GOW et al., Appellants, v.
MAURY et al., Respondents.

(Nos. 5,222 and 5,223.)

(Submitted May 29, 1923. Decided June 25, 1923. Resubmitted September 20, 1923. Decided November 1, 1923.)

[220 Pac. 527.]

*Probate Proceedings — Executors and Administrators — Attorneys' Fees—Statutes — Construction—Jury Trial—Constitution.*

Executors and Administrators—Attorneys' Fees—Fixing an Allowance by Court—Statute—Construction.
   1. *Held,* that under Chapter 45, Laws of 1919, amendatory of section 7153, Revised Codes of 1907 (now sec. 9786, Rev. Codes 1921), providing that in probate proceedings the court may fix and allow the compensation of attorneys representing executors and administrators, the jurisdiction of the court was enlarged to the extent of empowering it to determine and fix the amount due an attorney for services rendered an administrator and order that the amount so fixed be set apart out of the funds of the estate for his use, the effect of the amendment being to constitute the attorney a "person interested in the estate" and *to make his claim for reasonable compensation a legal debt against the estate to be paid as a part of the necessary expenses of administration.*

Same—Attorneys' Fees—Allowance to Personal Representative—Statute—Construction.
   2. The amendment of section 7631, Revised Codes of 1907 (now sec. 10285, Rev. Codes 1921), made by Chapter 55, Laws of 1919, goes no further than to expressly authorize the district court sitting in probate to do what under the section before amendment it could do only under its implied power, *viz.:* to fix the amount to be allowed to the personal representative of an estate as compensation for the services of an attorney in advance of the actual payment of the fee by him, and therefore under it the court has not the power on the petition of an attorney to fix and allow to him directly the compensation due him from an administrator in his representative capacity, to be paid out of the funds of the estate as a legal claim against it.

Statutory Construction—Rule.
   3. In the construction of a statute every part of it must be made operative, if possible, and no word is to be considered meaningless if a construction can be found which will give it effect.

Probate Proceedings—Extent of Jurisdiction.
   4. Although the jurisdiction of the district court sitting in probate is limited to the exercise of the powers conferred by statute, it

   1. Liability of estate to attorney employed by personal representative, see notes in Ann. Cas. 1917B, 216; 25 L. R. A. (n. s.) 72.

[68 Mont. 556.]

nevertheless possesses all the authority incidentally necessary to the effective exercise of the powers expressly conferred.

Same—Allowance of Attorneys' Fees—Statute — Constitutionality — Jury Trial.

5. *Held*, that Chapter 45, Laws of 1919 (sec. 9786, Rev. Codes 1921), authorizing the district court sitting in probate to fix and allow the compensation of attorneys representing executors, administrators, *etc.*, as construed in paragraph 1 above, is not unconstitutional, as denying a jury trial.

Same—Jury Trial—Demand Necessary.

6. Where objectors to the allowance of an attorney's fee for services rendered an administrator did not demand a jury trial (sec. 10369, Rev. Codes 1921), they were in no position to complain on appeal that the court tried the cause without a jury.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

Petition by H. Lowndes Maury and another, copartners doing business as Maury & Melzner, for allowance of attorneys' fees from the estate of Charles D. McLure, deceased. From an order fixing fees and ordering the former executors to file supplemental account including such fees, and from an order settling the account, Paul A. Gow, administrator, and another, appeal. Affirmed.

*Messrs. Walker & Walker* and *Mr. J. A. Poore,* for Appellants, submitted a brief; *Mr. Poore* argued the cause orally.

At the time of the employment of respondent attorneys by the executors of the estate it was the settled law of this state that the employment and payment of counsel by the executors of an estate are matters of purely personal and private contract between the executors and the attorneys; that the attorneys have no claim against the estate for their compensation, and, if the executors do not voluntarily pay for such services, the attorneys must seek redress in an ordinary action at law (*State ex rel. Eisenhauer* v. *District Court,* 54 Mont. 172, 168 Pac. 522; *State ex rel. Kelly* v. *District Court,* 25 Mont. 33, 63 Pac. 717; *First Nat. Bank* v. *Collins,* 17 Mont. 433, 52 Am. St. Rep. 695, 43 Pac. 499; *State ex rel. Cohen* v. *District Court,*

53 Mont. 210, 162 Pac. 1053); and that with the contract between the executors and the attorneys, the probate court has no concern. It cannot construe or enforce it, and the interests of the estate cannot be jeopardized, whatever its terms may be. The attorneys must look to the executors alone for their compensation, and their contract of employment can be enforced only in the manner that other private contracts of like character are enforceable. The only liability for the attorneys' compensation is the personal liability of the executors. (*State ex rel. Eisenhauer* v. *District Court, supra.*) This was the law and still remains the law, unless it has been changed or modified by the provisions of Chapters 45 and 55, Laws of 1919. We maintain that it has not been changed; but if those Chapters are to be construed as having wrought the change contended for by respondent; if either party is not now entitled to have the reasonable value of the services rendered under the contract determined in a court of general jurisdiction, and by a jury, then these Chapters are unconstitutional as being in violation of the provisions of section 23 of Article III of the Constitution of Montana. The attorneys for the executors are seeking remuneration directly from the estate in the probate court. They are attempting to show that their employers are bankrupt and cannot respond in damages, and that they are therefore entitled to look to the estate for remuneration, although there is no contractual relation between them and the estate, and there is a contractual relation between them and the executors. In other words, they are attempting to work a change in the status of all the parties by reason of the enactment of Chapters 45 and 55. It is not a matter of change of remedies, but a taking away from the parties of a right to have the value of the services of the attorneys determined in a court of general jurisdiction, upon issues framed on proper pleadings, and their cause submitted to a jury. The court will give a statute such a construction as will render it operative, if possible. (*Thomas* v. *Smith,* 1 Mont. 21.)

*Messrs. Canning & Geagan,* for Respondents, submitted a brief; *Mr. P. E. Geagan* argued the cause orally.

In approaching the argument of the law of this case, we admit that, while our court has never passed on that question in the case of an insolvent executor or in case of a nonresident executor, we believe that our court would have in times past in such instances followed the decisions of sister states. Yet, we admit that in the ordinary instances of a solvent executor residing within the state the law was with the appellants, providing no change was made in that law in 1919 by the legislative assembly of the state of Montana, and unless these decisions overlooked a plain constitutional provision. This assembly realized the evil that existed under such law and desired to remedy it and did fully and completely remedy that law.

We do not think that the opinion in the *Eisenhauser Case,* referred to in appellant's brief, would have been as it was, on a different state of facts. For instance, if the record there had shown that the executor in that case was insolvent, or that he had left the jurisdiction to permanently reside elsewhere. (See *Manderson's Appeal,* 113 Pa. St. 631, 6 Atl. 893; 4 Cyc. 987.)

The supreme court of Indiana, in the case of *Long* v. *Rodman,* 58 Ind. 58, speaking of a statute similar to ours before amendment which stated: "The proper court may allow an executor or administrator reasonable attorneys' fees, where he employs an attorney in the management of such estate," while discussing the law as to the personal liability of executors and administrators and agreeing with that doctrine, said: "But, while this doctrine is well supported by authority, and is in our opinion in strict harmony with our law, yet, inasmuch, as, by the statutory provision above cited, the reasonable fees of an attorney employed by an executor or administrator in the management of the decedent's estate are made a proper charge against the estate, we hold that the attorney may, in the event of the nonpayment of his fees, waive his personal claim against the executor or administrator therefor, and apply

directly to the proper court for the allowance thereof to be paid out of the estate. It was so held by this court, in effect, in the case of *Nave* v. *Salmon,* 51 Ind. 159, where an attorney presented his claim against a decedent's estate for services rendered to a former administrator of said estate, and it was there held that the claim was a proper charge against said estate.'' (See, also, *Miller* v. *Tracy,* 86 Wis. 330, 56 N. W. 866; *Clapp* v. *Clapp,* 44 Hun (N. Y.), 451; 11 Cyc. 680, 795.)

It is beyond doubt plain that the legislature in amending the sections as to costs, and in giving the court jurisdiction to fix the amount of the attorney fees, intended to remedy a long-standing abuse whereby attorneys at law, who are officers of the court, had been deprived of the same protection that is given to other officers of the court, and that the exercise of jurisdiction as in this case is fully sustained.

Counsel say that they have a right of trial by jury, and that it was not waived. In both of these contentions they are mistaken. It was necessary for counsel to demand a jury trial in writing. (*In re Tuohy's Estate,* 33 Mont. 230, 241, 242, 83 Pac. 486.) And by not doing so they waived it.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

For a period of twenty-nine months prior to October 22, 1920, these respondents rendered legal services at the instance and request of William R. McLure and Clara McLure Jones, respectively executor and executrix of the last will of Charles D. McLure, deceased, in the administration of the estate, and in conducting actions in court in behalf of the estate. Some changes in the personnel of the law firm rendering the services occurred during the time, but reference is here made to these respondents as though there had not been such change. Upon the date last mentioned the respondents ceased to represent the executor and executrix, but they had not received any substantial remuneration for their services. On April 23, 1921, an order was made revoking the letters testamentary of Will-

[68 Mont. 556.]
iam R. McLure and Clara McLure Jones, and special letters of administration were issued to D. J. O'Connor, and later letters of administration with the will annexed were issued to Paul A. Gow. The first account of the executor and executrix was filed February 24, 1921. In the account no allowance was asked for fees paid to the respondents, nor was the court asked to fix fees for their services. A hearing on this account was not had until February 11, 1922. On January 30, 1922, the respondents filed objections to the account upon the ground that the same did not contain any mention of their services nor ask the court to fix the fees for the same. On the same day they filed a petition asking the court to fix and allow their compensation, and in the petition set forth the value of their services and the amount then due to them. They alleged that the executor and executrix were insolvent and unable to respond in damages; that the only means available to them to obtain compensation for their services was through an allowance made by the court from the funds of the estate. They prayed that a citation issue directing the executor and executrix to appear upon a day certain and show cause why the court should not grant the prayer of their petition. The former executor and executrix presented objections to the respondents' petition, and objections to the account as well as to the petition were also presented by the special administrator and by certain creditors of the estate, among the latter being the St. Louis Union Trust Company. One ground of objection to the petition for allowance of attorneys' fees was that the district court sitting in probate has no jurisdiction to order the former executor and executrix to include in their account any fees for legal services rendered to them by the attorneys in the matter of the estate; that the employment is purely a matter of contractual relation and personal concern between the executor and executrix and the attorneys, in which the estate is not interested unless and until the executor and executrix see fit to claim the same as a credit against the estate.

On February 11, 1922, a hearing was had upon the account, petition and the several objections, in which the respondents, the former executor and executrix, the special administrator, and the objecting creditors participated. On July 12, 1922, the court made an order fixing the attorneys' fee, and the former executor and executrix were directed to file a supplemental account including the item and an item for money expended by the attorneys, as expenses incidental to the administration of the estate. Pursuant to the order a supplemental account was filed, and under protest the items for attorneys' fees and money expended were included. On August 2 the court reaffirmed and readopted the order of July 12. The supplemental account was settled by the court and the allowance of the amount of the attorneys' fee was again specifically approved on August 19. An appeal was taken from the order of August 2 and from the order settling the account by Paul A. Gow as administrator c. t. a. and the St. Louis Union Trust Company, a creditor of the estate, and a separate appeal was taken by Clara McLure Jones and William R. McLure individually and as former executor and executrix. These appeals were consolidated and considered together.

By an opinion promulgated on June 25 last this court reversed the orders solely upon the ground that the trial court was without authority to make them, but later granted a rehearing to the end that further consideration might be given to the amendatory statutes enacted in 1919, and particularly to Chapter 45, Laws of 1919.

Although the lower court appears to have made three orders, they all refer generally to the same matter, and for the sake of brevity will be treated as one order, the effect of which was to fix the amount due to the attorneys, compel the executor and executrix to include the amount so fixed in their supplemental report, and to direct that the amount so fixed be paid to the attorneys out of any funds belonging to the estate and available for the payment of the expenses of administration. The order indi-

cates that it was based upon the petition presented by the attorneys, and it will be so treated.

It is elementary that only parties interested in the estate [1, 2] could have any right to object to the report or petition the court for affirmative relief (*State ex rel. Shields* v. *District Court*, 24 Mont. 1, 60 Pac. 489), so that the question arises: Did these attorneys become interested in the estate, as that phrase is understood in probate law, by reason of the fact that they rendered the services mentioned and were not paid therefor?

Prior to 1919 the question was not an open one, and to appreciate the force and effect of the statutes under review a reference to certain rules of law in effect at the time of their enactment is necessary. A new Probate Practice Act was enacted in 1877, which provided: "He [the executor or administrator] shall be allowed all necessary expenses in the care, management, and settlement of the estate, including reasonable fees paid to attorneys for conducting the necessary proceedings or suits in the probate or other courts," *etc.* (Sec. 251, p. 305, Laws 1877.) The statute was carried forward without change into the Revision of 1879 (sec. 251, p. 239, Rev. Stats. 1879), and into the compilation of 1887 (sec. 251, p. 337, Comp. Stats. 1887). In the Codes of 1895 the statute was re-enacted with this modification: The words "or suits in the probate or other courts" were stricken out, and the following were inserted in lieu thereof: "And for conducting actions in courts." (Sec. 2774, Code Civ. Proc. 1895.) With that amendment the statute became section 7631, Revised Codes of 1907, and has continued in effect to the present time except in so far as it was modified by the amendments made in 1919.

Under statutes of like effect which prevail in most of the states it is the general rule that an attorney employed by the personal representative of an estate is the attorney for the personal representative, and not the attorney for the estate (1 Ross on Probate Law and Practice, sec. 492); that such an office as "attorney for the estate" is unknown to the law

(*Ogier's Estate,* 101 Cal. 381, 40 Am. St. Rep. 61, 35 Pac. 900); that the employment and compensation of the attorney is a matter of private contract between the personal representative and the attorney with which the probate court has no concern (*Austin* v. *Munroe,* 47 N. Y. 360); that the attorney does not sustain any relationship whatever to the estate, and cannot assert any claim against the estate for his compensation (*In re Sullivan,* 36 Wash. 217, 78 Pac. 945); that the attorney does not have any lien upon the property of the estate (*Waite* v. *Willis,* 42 Or. 288, 70 Pac. 1034), and is not a person "interested in the estate" (*In re Kruger's Estate,* 143 Cal. 141, 76 Pac. 897); that, if the personal representative fails to compensate the attorney for his services, the remedy of the attorney is by an action at law against the personal representative individually (*Brown* v. *Quinton,* 80 Kan. 44, 18 Ann. Cas. 290, 25 L. R. A. (n. s.) 71, 102 Pac. 242); that the personal representative may reimburse himself out of the funds of the estate for what he has paid to his attorney, if the services were necessary and the amount paid was reasonable (*Munger's Estate,* 168 Iowa, 372, Ann. Cas. 1917B, 213, 150 N. W. 447), but the allowance can be made only to the personal representative and not to the attorney (*Briggs* v. *Breen,* 123 Cal. 657, 56 Pac. 633, 886); that prepayment of the fee by the personal representative is a condition precedent to having the claim allowed in his report (*Thacher* v. *Dunham,* 5 Gray (Mass.), 26; *Bates* v. *Vary,* 40 Ala. 421), and that the probate court has no jurisdiction to direct the personal representative to include in his report an allowance for attorney fee (1 Woerner's American Law of Administration, sec. 152), or to direct payment of such fee (*Townsend* v. *Brooke,* 9 Gill (Md.), 90; *Hoes* v. *Halsey,* 2 Dem. Sur. (N. Y.) 577). Different phases of this rule have been invoked and enforced by this court in *First Nat. Bank* v. *Collins,* 17 Mont. 433, 52 Am. St. Rep. 695, 43 Pac. 499, *State ex rel. Kelly* v. *District Court,* 25 Mont. 33, 63 Pac. 717, *Lawson* v. *Cobban,* 38 Mont. 138, 99 Pac. 128, *State ex rel. Cohen* v. *District Court,*

53 Mont. 210, 162 Pac. 1053, and in *State ex rel. Eisenhauer* v. *District Court,* 54 Mont. 172, 168 Pac. 522. In other states the attorney is permitted to apply to the court and have .his compensation allowed to him directly from the funds of the estate, but, with these exceptions covered by special statutes or sanctioned· by practice, the rule above has been in effect in this country for many years and in this jurisdiction since 1877 at least.

In 1919 the two statutes were enacted by our legislative assembly which, it is contended, changed the rule and justify the order in question. The one Act (Chap. 45, Laws 1919) amended section 7153, Revised Codes of 1907, and the other (Chap. 55, Laws 1919) amended section 7631 of the same Code. The amended statutes are now, respectively, sections 9786 and 10285, Revised Codes of 1921. The construction of the latter Act involves no difficulty. It permits the personal representative of the estate to have an allowance made to him for compensation for his attorney in advance of actual payment of the fee—something he could not do before section 7631 was amended. The amended section expressly confers upon the court authority to fix the amount to be allowed to the personal representative as compensation for the services of his attorney, whereas under the statute before the amendment was made the authority was implied. There is not anything in the amendment to suggest an intention on the part of the legislature to create a relationship between the attorney and the estate or to constitute the attorney a person interested in the estate. The new statute, like the old one, deals exclusively with the compensation of and allowances to be made to the personal representative, and affords no justification for the order in question.

The construction of Chapter 45, above, presents a more difficult question. The legislature might have expressed its intention in terms so plain that its meaning could not be open to doubt, as did the legislature of California in amending section 1616 of the California Code of Civil Procedure; but we

are not at liberty to disregard the amendment or to assume that no practical purpose was sought merely because the language is not well chosen or because the Act bears upon its face the marks of its hasty and ill-considered preparation.

The language of section 7153 was not changed. The amendment was made by inserting the words italicized, and as amended the section now reads as follows: ''The measure and mode of compensation of attorneys and counsellors at law is left to agreement, express or implied, of the parties, *except that in probate proceedings the court may fix and allow the compensation of attorneys representing administrators, executors, guardians and trustees, and agents appointed by the court.* But parties to actions or proceedings are entitled to costs and disbursements as hereinafter provided.''

In contradistinction to Chapter 55, which confers upon the probate court express authority to fix and determine the amount of credit which the personal representative shall receive for compensation of the attorney employed by him, Chapter 45 in express terms declares that the court may fix and allow the compensation *of the attorney.*

It is one of the elementary rules of statutory construction [3] that every part of a statute must be made operative if it is possible to do so (*State ex rel. Anaconda C. M. Co.* v. *District Court,* 26 Mont. 396, 68 Pac. 570, 69 Pac. 103), and that no word in a statute is to be considered meaningless if a construction can be found which will give it effect (*Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454).

The word ''fix'' means to decide definitely; to settle; to determine. (Standard Dictionary; 2 Words and Phrases, Second Series, 575; Bouvier's Law Dictionary.) The word ''allow'' means to grant a right, privilege, or share (New Standard Dictionary); to give a fit portion out of a larger property or fund (Black's Law Dictionary). To allow an account or claim is to accept or admit it as a legal demand. (*People ex rel. Dinsmore* v. *Gilroy,* 82 Hun, 500, 31 N. Y. Supp. 776.) To allow impliedly premises a fund available

out of which payment may be made. (*In re Farrell,* 51
N. J. Eq. 353, 27 Atl. 813.) An allowance is a definite sum
or quantity set apart or granted. (Bouvier's Law Diction-
ary.)

Bearing in mind the general rule first adverted to above, and
the fact that this court had held repeatedly that the at-
torney has no claim against the estate for his compensation,
that the probate court cannot adjudicate any claim as be-
tween the attorney and the personal representative, that the
attorney must seek his remedy in a court of competent juris-
diction in an action at law, and that in the case of *State ex rel.
Kelly* v. *District Court,* above, this court has declared that
the district court sitting in probate has no authority "to
segregate and set apart any sum from the funds of the es-
tate for the use of counsel," we think it possible to discover
the intention of the legislature in enacting Chapter 45, and
to give meaning to the language employed. Evidently the
purpose was to enlarge the jurisdiction of the court so that
it could determine the amount due to the attorney—a power
which the court did not have before—and order that amount
set apart out of the funds of the estate under its control,
for the use of the attorney. We think this is what the legis-
lature intended to accomplish, and that the language employed
is open to this construction. Any other interpretation would
render the Act meaningless, or at best of no practical effect.

From the premises just stated it follows necessarily that
by the enactment of Chapter 45 the legislature constituted the
attorney "a person interested in the estate," and his claim
for reasonable compensation, a legal demand against the es-
tate to be paid as part of the necessary expenses of adminis-
tration. (*Estate of Hite,* 155 Cal. 451, 101 Pac. 448.) Under
the statute the employment ceases to be the engagement of
the attorney with the personal representative individually, and
becomes the engagement of the attorney with the estate
through the instrumentality of the personal representative as
the agent of the estate. And the statute thus construed is

not new or strange: on the contrary, it is in harmony with the general trend of modern legislation. In 2 Woerner's American Law of Administration, section 356, the author says: "In view of the ultimate liability of the estate for the disbursements made in its behalf by the executor or administrator and of the duty incumbent upon the probate court to pass upon the question of the reasonableness of the charges as well as the liability of the estate, it would seem that original jurisdiction to adjudicate between executors or administrators and their creditors for services in respect of the estate should, on principle, be vested in the probate court to avoid circuity of action and unnecessary costs and delay, and there seems to be legislative and judicial tendency in that direction, particularly in the western states."

Under express statutory provisions in force in Arkansas, Colorado, Indiana and Missouri the expenses of administration are constituted "claims against the estate" giving to the attorney the right to have his fee allowed to him directly from the funds of the estate (*Kenyon* v. *Gregory,* 127 Ark. 525, 192 S. W. 887; *United States F. & G. Co.* v. *Miller,* 44 Colo. 557, 98 Pac. 828; *Long* v. *Rodman,* 58 Ind. 58; *Matson & May* v. *Pearson,* 121 Mo. App. 120, 97 S. W. 983), and by construction the same effect has been given to the statute in District of Columbia, Nebraska, Oregon and Texas (*Brandenburg* v. *Dante,* 261 Fed. 1021, 49 App. D. C. 141; *Hazlett* v. *Moore's Estate,* 89 Neb. 372, 131 N. W. 589; *Knight* v. *Hamaker,* 40 Or. 424, 67 Pac. 107; *Portis* v. *Cole,* 11 Tex. 157).

By a statute in force in Connecticut since 1882 an attorney who has a claim against the personal representative of an estate may maintain an action at law against the personal representative, and, if successful, the judgment shall direct that payment be made to the attorney out of the funds of the estate. (*Brown* v. *Eggleston,* 53 Conn. 110, 2 Atl. 321.)

By amendments to section 1616, California Code of Civil Procedure, made in 1905 and 1911, the attorney is authorized to petition the court for an allowance of his fee directly to him.

It is true that Chapter 45 does not provide any method of procedure, but section 8882, Revised Codes of 1921, declares: "When jurisdiction is, by the Constitution or this Code, or any other statute, conferred on a court or judicial officer, all the means necessary to carry into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

The construction we give to Chapter 45 does not operate to impose any additional burden upon the estate. Reading the two amendatory statutes together, and giving effect to each, it follows that upon application of the attorney for an allowance to him directly he is entitled to receive only such compensation for his services as the court would have allowed to the personal representative for counsel fees as expenses of administration upon his account (*Estate of Hite,* above), or, in other words, upon direct application by the attorney the court must determine whether the services rendered were necessary, and, if necessary, must fix and allow reasonable compensation. The only material difference between the old statute and the new ones is that the court may now make the allowance to the attorney directly instead of compelling the attorney to collect from the personal representative and then giving credit to the latter upon his account.

Before these amendments were made the estate could not escape ultimate liability for reasonable compensation for necessary services rendered in its behalf by the attorney if there were any funds in the estate available for the payment of the expenses of administration. If the personal representative were financially responsible, the attorney collected from him, and he in turn reimbursed himself from the funds of the estate. To the general rule that the only avenue of relief open to the attorney was an action at law against the personal representative there has always been this exception: If the per-

sonal representative were insolvent or out of the jurisdiction the attorney might by an appropriate suit in equity enforce his claim against the estate upon the principle of equitable substitution. (2 Story's Equity Jurisprudence, sec. 1320, note; *Pike* v. *Thomas*, 65 Ark. 437, 47 S. W. 110; *Clopton* v. *Gholson*, 53 Miss. 466; *Gates* v. *McClenahan*, 124 Iowa, 593, 100 N. W. 479; *Clapp* v. *Clapp*, 44 Hun (N. Y.), 451; *Hewitt* v. *Phelps*, 105 U. S. 393, 26 L. Ed. 1072 [see, also, Rose's U. S. Notes]; *Carpenter* v. *United States F. & G. Co.*, 123 Wis. 209, 101 N. W. 404; *In re Murray's Estate*, 56 Or. 132, 107 Pac. 19; *Guerry* v. *Caspers*, Bail. Eq. (S. C.) 159.) And the same rule prevails in Alabama by statute. (*Leahart* v. *Deedmeyer*, 158 Ala. 295, 48 South. 371.)

Since Chapters 45 and 55 were enacted by the same session of the legislature, we are required to reconcile their provisions, if possible, and give effect to both Acts. (*State ex rel. Hay* v. *Hindson*, 40 Mont. 353, 106 Pac. 362.) Under the construction we have adopted, the provisions of the two statutes may be harmonized. The attorney may apply to the court and have his compensation fixed and allowed, but he is not compelled to do so. He may secure his compensation from the personal representative as the agent of the estate; but in either event the personal representative is entitled to credit on his account for the amount fixed by the court.

The contention is advanced that this construction of Chapter **[4-6]** 45 renders the Act unconstitutional. Section 23, Article III, of our Constitution secures the right of trial by jury in that class of cases in which the right might have been asserted at the time the Constitution was adopted. Although it has been held uniformly that the jurisdiction of the district court sitting in probate is limited to the exercise of the powers conferred by statute, nevertheless the court does possess all the authority incidentally necessary to the effective exercise of the powers expressly conferred. (*In re Davis' Estate*, 27 Mont. 490, 71 Pac. 757.) At the time the Constitution was adopted, the statute then in force conferred upon

the probate court authority to pass upon all debts of an estate and all claims and demands against it (secs. 1, 153, 251, 273, 276 and 278, Div. II, Comp. Stats. 1887), and particularly authorized the court to allow reasonable compensation for necessary legal services as a part of the expense of administration (sec. 251, above). While it is true that the allowance was made to the personal representative, and not to the attorney directly, it was so made only because the statute then in force did not constitute an item of expense a claim or charge against the estate. In the absence of any provision of the Constitution prohibiting the legislature from giving to an item of expense of administration the character of a claim or demand against the estate, the authority exercised in the enactment of Chapter 45 cannot be questioned.

A demand for a jury trial was not made in this instance; hence appellants cannot complain. Section 10369, Revised Codes of 1921, provides: "If no jury is demanded, the court or judge must try the issues joined." (See *In re Tuohy's Estate*, 33 Mont. 230, 83 Pac. 486.)

We deem the evidence ample to sustain the court's conclusion that the services rendered by these attorneys were necessary and the amount allowed reasonable.

The opinion heretofore promulgated is withdrawn and the orders are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.

Rehearing denied November 21, 1923.